# In the United States Court of Federal Claims

No. 15-986L
(Filed: March 9, 2018)

| | |
|---|---|
| MICHAEL A. AND TINA C. BRATCHER, et al., | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) ) ) |
| THE UNITED STATES OF AMERICA, | ) ) ) |
| Defendant. | ) ) ) |

Keywords: Rails-to-Trails; Fifth Amendment Takings Clause; Uniform Relocation Assistance and Real Property Acquisition Policies Act; 42 U.S.C. § 4654; Attorney Fees; Fee Shifting; Forum Rate; Davis County Exception.

*Mark F. (Thor) Hearne, II*, Arent Fox LLP, Washington, DC, with whom were *Lindsay S.C. Brinton*, *Meghan S. Largent*, *Stephen S. Davis*, and *Abram J. Pafford*, Arent Fox LLP, for Plaintiffs.

*Randall M. Stone*, Senior Attorney, Environment and Natural Resources Division, U.S. Department of Justice, Washington, DC, with whom was *Jeffrey H. Wood*, Acting Assistant Attorney General, for Defendant.

## OPINION AND ORDER

**KAPLAN, Judge.**

This rails-to-trails case is currently before the Court on Plaintiffs' Motion for Payment of Attorney Fees and Litigation Expenses. In accordance with the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. § 4654(c) (URA), Plaintiffs request an award of $1,072,455.40 in attorneys' fees and $95,668.81 for expenses incurred in connection with this litigation. The government opposes Plaintiffs' motion, contending that the number of hours claimed and the hourly rates charged are excessive. It also contends that several of Plaintiffs' claimed expenses are unreasonable and should be disallowed.

For the reasons set forth below, the Court concludes that Plaintiffs are entitled to an award of attorneys' fees in the amount of $523,786.98 and reimbursement for expenses in the amount of $69,098.83. Accordingly, Plaintiffs' motion is **GRANTED-IN-PART** and **DENIED-IN-PART**.

## BACKGROUND

This rails-to-trails takings case involves properties abutting a 2.91-mile railroad right-of-way in Lafayette County, Missouri. Compl. at 1, ECF No. 1. Those properties became the

subject of a Notice of Interim Trail Use issued by the Surface Transportation Board in 2012. See id.; see also id. ¶ 9. This suit was initiated on September 4, 2015, when the owners of two properties along the right-of-way (Michael and Tina Bratcher and Michael Slaughter) filed a complaint in this Court seeking just compensation under the Fifth Amendment's Takings Clause. See id. at 1–2. On January 15, 2016, Plaintiffs filed an amended complaint which added twenty additional property owners as plaintiffs. ECF No. 12.

The parties filed a stipulation regarding title matters on July 1, 2016, and a revised stipulation on July 29, 2016. ECF Nos. 17, 20. Several weeks later, on August 19, 2016, they reported to the Court that they had resolved all liability matters through the stipulation. ECF No. 24. Based on the stipulation, Plaintiffs subsequently voluntarily dismissed thirteen claims asserted by twelve of the twenty-two landowners (including the claims asserted by the original plaintiff property owners, the Bratchers and Michael Slaughter). ECF Nos. 37 and 38.

In the meantime, on August 26, 2016, the Court issued a pre-trial order to govern the valuation stage of the case. ECF No. 27. The parties thereafter engaged in discovery and a trial date was set.

On August 14, 2017, Plaintiffs filed a notice of acceptance of the government's Rule 68 offer of judgment. See Landowners' Notice of Acceptance of Gov't's Rule 68 Offer of J., ECF No. 81. The offer Plaintiffs accepted included a total principal amount of $77,466.80, covering fourteen claims made by a total of eleven property owners. Id. Ex. A. at 2–3, ECF No. 81-1. The range of payments per claim was between $603.60 and $14,575.20. Id.

On September 1, 2017, Plaintiffs filed the present motion for an award of attorneys' fees and expenses. ECF No. 86. The government filed its opposition on October 13, 2017, ECF No. 97, and Plaintiffs replied on October 27, 2017, ECF No. 100.

Judge Bruggink, to whom this case was then assigned, set argument on Plaintiffs' motion for January 8, 2018. Prior to that date, however, Judge Bruggink determined that a declaration filed by Plaintiffs with their reply brief had created a ground for his disqualification under 28 U.S.C. § 455(a). See Order, ECF No. 105. Accordingly, Judge Bruggink transferred the matter to the undersigned by order of January 12, 2018. Id.; see also ECF No. 107.

That same day, Plaintiffs filed a motion seeking an order requiring the parties to engage in mediation regarding Plaintiffs' attorney fee request. ECF No. 106. The government opposed the motion, ECF No. 108, and the Court denied it on January 25, 2018, ECF No. 112.

The Court held oral argument on Plaintiffs' motion for an award of attorneys' fees on February 13, 2018.

**DISCUSSION**

**I.       Standards**

The URA's attorney fee provision provides, in pertinent part, that:

> The court rendering a judgment for the plaintiff in a proceeding brought
> under section 1346(a)(2) or 1491 of Title 28, awarding compensation for
> the taking of property by a Federal agency . . . shall determine and award
> or allow to such plaintiff, as a part of such judgment . . . such sum as will
> in the opinion of the court . . . reimburse such plaintiff for his reasonable
> costs, disbursements, and expenses, including reasonable attorney,
> appraisal, and engineering fees, actually incurred because of such
> proceeding.

42 U.S.C. § 4654(c). The government does not dispute that Plaintiffs are entitled to an award of
reasonable attorneys' fees and expenses for services performed in connection with the claims
that were the subject of its offer of judgment. See United States' Resp. to Pls.' Mot. for Att'ys'
Fees & Expenses Under the [URA] & RCFC 54(d) (Def.'s Resp.) at 1–2, ECF No. 97.

"In determining the amount of reasonable attorneys' fees under federal fee-shifting
statutes, the Supreme Court has consistently upheld the lodestar calculation as the 'guiding light
of [its] fee-shifting jurisprudence.'" Bywaters v. United States, 670 F.3d 1221, 1228–29 (Fed.
Cir. 2012) (alteration in original) (quoting Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 551
(2010)). Under the "lodestar" approach, the court multiplies the number of hours reasonably
expended in the case by a reasonable hourly rate. Id. at 1225–26; see also Blum v. Stenson, 465
U.S. 886, 888 (1984). Hourly rates are determined "according to the prevailing market rates in
the relevant community." See Blum, 465 U.S. at 895. The rates should be in line with those of
other attorneys in the "relevant community" offering similar services with "reasonably
comparable skill, experience and reputation." Id. at 895 n.11

The court of appeals has adopted the "forum rule" to identify the "relevant community"
that serves as the basis for determining a reasonable hourly rate. See Avera v. Sec'y of HHS, 515
F.3d 1343, 1348–49 (Fed. Cir. 2008) (observing that "the courts of appeals have uniformly
concluded that, in general, forum rates should be used to calculate attorneys' fee awards under
other fee-shifting statutes"). Under that rule, the location of the trial court is typically designated
as the applicable forum. See Bywaters, 670 F.3d at 1233 (citing Avera, 515 F.3d at 1348–49)
(noting that the court should generally calculate the lodestar amount based on rates prevailing in
the forum court's geographic location). Washington, DC is the applicable forum for cases before
the Court of Federal Claims. See Avera, 515 F.3d at 1348; Biery v. United States (Biery I), Nos.
07-693L & 07-675L, 2012 WL 5914260, at *6 (Fed. Cl. Nov. 27, 2012).

The Federal Circuit, however, has recognized a "limited exception" to the forum rule in
cases where the bulk of the work in the case is performed outside of the forum and where there is
a "very significant" difference between the forum rate and the local rate. Avera, 515 F.3d at 1349
(citing Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. EPA, 169 F.3d
755, 758–60 (D.C. Cir. 1999) (per curiam)). This limitation on the general rule—known as the

"Davis County exception" (in recognition of the case from which it originates)—is designed to prevent windfalls and avoid "the occasional erratic result where the successful petitioner is vastly overcompensated." Id. (quoting Davis Cty., 169 F.3d at 758); see also Biery v. United States (Biery III), 818 F.3d 704, 710 (Fed. Cir.) (observing that "[u]ltimately, a fee award must 'be adequate to attract competent counsel,' but must not 'produce windfalls to attorneys'" (quoting Hensley v. Eckerhart, 461 U.S. 424, 444 (1983) (Brennan, J., concurring in part and dissenting in part)), cert. denied, 137 S. Ct. 389 (Mem.) (2016); Bywaters, 670 F.3d at 1224, 1232–34 (applying the rationale of Avera to a case arising under the URA's attorney fee provisions).

## II.     Hours Compensable

Plaintiffs bear the burden of proving that the number of hours submitted for payment is reasonable and does not include hours that are "excessive, redundant, or otherwise unnecessary." Hensley, 461 U.S. at 434. In this case, Plaintiffs claim that counsel and support staff spent more than 1,900 hours on the litigation, an expenditure that they argue "was reasonable and necessary – especially given the government's aggressive opposition." Landowners' Mem. in Supp. of Mot. for Payment of Att'y Fees & Litigation Expenses (Pls.' Mem.) at 1, ECF No. 86-1.

The government challenges the number of hours for which Plaintiffs seek attorneys' fees on a number of bases, claiming: 1) that Plaintiffs have included hours attributable to claims which they agreed to dismiss and on which they accordingly did not prevail; 2) that Plaintiffs have claimed reimbursement for time spent on client solicitation and business development activities; 3) that Plaintiffs are not entitled to recover fees associated with what the government calls a "deficient deposition notice and subpoena" that was served on a third party; 4) that Plaintiffs are not entitled to fees for billings the government characterizes as "questionable" and attributable to attorneys "who have not appeared in the case"; 5) that Plaintiffs are not permitted to seek fees for 100% of the time spent in travel; 6) that time spent on assorted other matters is not compensable; 7) that the fee request attributable to certain legal services is excessive given counsel's expertise; and 8) that fees for time spent preparing the motion for fees must be reduced. Each of these objections is addressed below.

### A.     Reduction for Claims on Which Plaintiffs Did Not Succeed

In the context of fee-shifting statutes like the URA, hours spent on unsuccessful claims should be excluded from the lodestar amount where the claim or claims on which a plaintiff failed to prevail is "distinct in all respects from his successful claims." Hensley, 461 U.S. at 440. Here, the claims on which Plaintiffs failed to prevail are readily distinguishable from those on which they did prevail, because the unsuccessful claims involved different pieces of property and therefore different property interests.

Plaintiffs' time records do not specify the claims or parcels of property to which the recorded hours pertain. Consistent with the approaches taken in similar cases, the Court will account for the time attributable to the unsuccessful claims by applying a percentage reduction to certain of the hours claimed. See Biery III, 818 F.3d at 712 (holding that "the Court of Federal Claims did not abuse its discretion when it reduced the hours and costs by 30% in order to take into account work done on behalf of the unsuccessful plaintiffs"); Gregory v. United States, 110

Fed. Cl. 400, 404–06 (2013) (applying percentage adjustment to hours claimed prior to grant of summary judgment as to some of the plaintiffs' claims).

Thus, as noted above, in a July 29, 2016 stipulation, the parties agreed that approximately 50% of the claims contained in the Amended Complaint should be dismissed. Recognizing, however, that the unsuccessful claims may have had issues that overlapped with the successful ones, the Court will disallow 40% rather than 50% of the hours claimed for work performed up through July 29, 2016. See Biery III, 818 F.3d at 712 (affirming CFC decision which—recognizing overlap—reduced hours by 30% where Plaintiffs did not prevail on 40% of their claims). This reduction will be applied after taking into consideration the other reductions described below.

**B.    "Client Solicitation and Business Development"**

The government contends that the Court should eliminate sixty-eight hours of the time claimed by Plaintiffs that it characterizes as "client solicitation" and "business development" activities. See Def.'s Resp. at 14–15. In particular, it challenges Plaintiffs' request for fees for time spent by counsel and paralegals preparing for and attending meetings with local landowners during the months that preceded the filing of the Amended Complaint in January 2016. See id.

The Court rejects the government's characterization of these meetings as "solicitation" or "business development" activities. Rather, these meetings were apparently held to engage in substantive discussions with individuals who had property interests in the land that abutted the railroad corridor. These individuals were presumably already interested in retaining counsel (at least for purposes of determining whether they had claims), and the meetings themselves were consultations with counsel. The research and discussions that occurred before, during, and after these meetings served as the basis for the amended complaint that Plaintiffs filed in January 2016. The Court, accordingly, rejects the government's categorical objection to the compensability of these hours. See Greenwood v. United States, 131 Fed. Cl. 231, 241 (holding that "class counsel's work investigating plaintiffs' claims, establishing the facts necessary to file a case on behalf of a class, prior to the filing of the complaint was not client development but necessary to ensure proper property claims and critical to every plaintiff achieving an award in th[e] case"), appeal docketed, No. 17-2243 (Fed. Cir. June 28, 2017). Instead, because this work occurred before the July 29, 2016 stipulation, the hours shall be reduced by 40% to account for time spent on unsuccessful claims, as described above.

**C.    Time Spent on Allegedly Deficient Deposition Notice and Subpoena**

The government asks that the Court cut 43.6 hours counsel billed for work attributable to a motion to quash that Union Pacific Railroad filed in response to a deposition notice that Plaintiffs filed. See Def.'s Resp. at 15–17. Plaintiffs noticed the deposition after the government preliminarily identified as one of its witnesses a "[r]epresentative of Union Pacific Railroad with knowledge about trail use negotiations with [the] City of Lexington." Id. at 15. Union Pacific moved to quash the deposition on the grounds that the notice was procedurally defective. Id. at 15–16; see also ECF No. 44. Thereafter, on May 15, 2016, the Court held a status conference at which there was an extended discussion of, among other things, whether the parties might enter a stipulation that would obviate any need for the government to present the testimony of a Union

Pacific witness. See Def.'s Resp. at 16; see also ECF No. 47. As a result of this discussion, Plaintiffs agreed to withdraw the notice of deposition pending a resolution of that issue. The Court, accordingly, denied the motion to quash as moot. ECF No. 47. And the parties (as well as Union Pacific) subsequently agreed that should the government decide to present the testimony of a Union Pacific witness, then Plaintiffs would have an opportunity to depose that witness. ECF No. 51.

According to the government, Plaintiffs should not recover attorneys' fees for any of the work in connection with the notice of deposition or motion to quash. It argues that "[t]he bottom line is that Plaintiffs generated unnecessary fees and costs by issuing and later withdrawing a deposition notice and subpoena that was deficient for several reasons, none of which were caused by the United States." Def.'s Resp. at 16. The Court disagrees. Once the government identified a representative of Union Pacific as a potential witness, it was reasonable for Plaintiffs to seek the opportunity to depose that witness. Further, Plaintiffs did not withdraw their notice of deposition because it was "deficient"; indeed, by the time of the status conference on May 15, the alleged deficiencies (i.e., the failure to identify the name of the witness or tender the witness fee) had been cured. Rather, Plaintiffs withdrew their notice because the government agreed to reconsider whether it was necessary to call a witness from Union Pacific at all. Thus, Plaintiffs' efforts had the desired effect of precluding the government from calling a witness whom Plaintiff had not had the opportunity to depose. The government's objection to Plaintiffs' recovery of fees in connection with this work lacks merit.

### D.     Allegedly "Questionable Billings"

The government seeks a reduction of 34.9 attorney hours for what it characterizes as "questionable billings." Id. at 17–19. First, it contends that Plaintiffs failed to establish the reasonableness of the 11.4 hours of time billed by Debra Albin-Riley, an Arent Fox partner. Id. at 17–18. In a declaration accompanying Plaintiffs' reply brief, Ms. Albin-Riley states that she is the partner at the firm who is responsible for retaining and managing experts in all Trails Act cases handled by the firm. Decl. of Debra Albin-Riley (Riley Decl.) ¶¶ 1–2, ECF No. 100-2. She explains that the total of 11.4 hours she billed to review pleadings and address "expert matters" involved the approval of engagements for the landowners' appraisers and mapping expert, and that it was necessary for her to review the pleadings to ascertain the exact scope of the experts' involvement in the case. Id. ¶ 3. The Court concludes that the amount of time claimed for work connected to approving engagements for Plaintiffs' experts in this routine case appears excessive, especially when the individual doing the work is a senior partner who performs these duties in connection with all of the firm's rails-to-trails cases. Accordingly, the Court will reduce the time claimed for Ms. Albin-Riley's work by 70%.

The government also challenges 18.9 hours of time billed by counsel Meghan S. Largent, contending that the vast majority of the work done involved reviewing filings or attending meetings, which the government argues is duplicative of the work performed by other attorneys in the case. Def.'s Resp. at 18. In a declaration submitted with Plaintiffs' reply, Ms. Largent states that she performed substantive work in this case that was necessary for Plaintiffs to prevail, including participation in client meetings and work on pleadings filed in the case. Decl. of Meghan S. Largent (Largent Decl.) ¶ 2, ECF No. 100-3.

The Court concludes that it was not unreasonable for Ms. Largent to bill time to attend client meetings in Lexington, Missouri on October 20, 2015, along with Ms. Brinton. It was not unreasonable for the firm to assign two attorneys to attend the meetings because there were multiple prospective plaintiffs. Ms. Largent's other entries involve brief periods of time to perform a review of pleadings and orders, to discuss discrete legal issues and other matters, to conduct specific research tasks, and to attend meetings with the litigation team to discuss strategy. The Court concludes that these entries also appear reasonable.

Finally, the Court rejects the government's challenge to the 4.6 hours Plaintiffs have billed for the services of attorney Donna Mo, a senior associate who conducted a discrete research project concerning appraisal issues. See Def.'s Resp. at 18–19. The government's objection to this entry appears to be based on the facts that Ms. Mo is in another practice group (Labor and Employment) and that her claimed billing rate is $665 per hour. The government's objection to the relatively modest number of hours claimed for this discrete research project is unpersuasive. The Court addresses the reasonableness of Ms. Mo's claimed hourly rate below.

### E.    Travel Time

The government contends that any time that counsel billed for travel should be reduced by at least 50%. Id. at 19–20. As the court of appeals has noted, however, "[w]hen a lawyer travels for one client he incurs an opportunity cost that is equal to the fee he would have charged that or another client if he had not been traveling." Crumbaker v. Merit Sys. Prot. Bd., 781 F.2d 191, 193 (Fed. Cir. 1986) (quoting Henry v. Webermeier, 738 F.2d 188, 194 (7th Cir. 1984)), modified on other grounds, 827 F.2d 761 (Mem.) (Fed. Cir. 1987).

In this case, a good portion of the time for which travel was billed involved trips by automobile within the State of Missouri. Because it would not have been possible to also perform case-related work during these trips, that time is fully compensable. See Greenwood, 131 Fed. Cl. at 242 (observing that "because the transit time was spent driving, it would not have been possible for class counsel to work while in transit and thus they are entitled to their fees while in transit").

On the other hand, the timesheets also include entries from Ms. Brinton and Mr. Davis which appear to involve airline travel to attend depositions in Flint, Michigan; Madison, Wisconsin; and Denver, Colorado. Ms. Brinton specified in two instances that she performed work on the case while on the plane, noting in an entry for July 6, 2017, that she "review[ed] notes and exhibits on plane" and in an entry for July 10, 2017, that she "review[ed] notes during travel." Landowners' Mot. for Att'y Fees & Expenses Under the URA & Local Rule 54(d) (Pls.' Mot.) Ex. 1 at 22–23, ECF No. 86-2.[1] In other entries, however, which combined time spent in travel with other tasks performed that same day, Ms. Brinton did not indicate that she performed work on this case while on the plane. See id. at 12 (entry for February 14, 2017); id. at 17 (entries for May 11 and 12, 2017); id. at 22–24 (entries for July 5, 11, 13 and 14, 2017). Similarly, Mr. Davis's entries do not specify that he performed work while travelling by air on May 8 and 9, 2017, and his entries similarly combine the time spent in travel with other tasks. See id. at 16–17. The Court will accordingly reduce the hours claimed for those entries by 20%

---

[1] Throughout this Opinion, citations to this exhibit are to the ECF pagination.

to account for time spent in airline travel where counsel could have performed other work on this case, but did not.

F.    **Miscellaneous**

The government also challenges Plaintiffs' request for fees for approximately 2.3 hours of time that appears to have been spent reviewing files in other cases. Def.'s Resp. at 20 (challenging entries from October 5, 2015, and December 23, 2015). The Court agrees that Plaintiffs have failed to explain the relevance of this work to this case. Accordingly it rejects these hours.

The government objects to time billed in relation to FOIA requests made by Plaintiffs requesting information about the number of hours that Justice Department attorneys put in on this case. Id. at 20–21. The Court is not persuaded by the government's argument that such time is not reimbursable because Plaintiffs had the option of seeking discovery of the documents it requested. While counsel may not double-bill by using FOIA to secure documents that have already been received through discovery, it is not unreasonable for them to employ other information-gathering techniques, including FOIA requests, as a means of building Plaintiffs' case.

The government challenges Plaintiffs' request for compensation attributable to certain time billed by paralegals for performing what the government characterizes as essentially secretarial tasks. Id. at 21–22; see also Biery v. United States (Biery II), Nos. 07-693L and 07-675L, 2014 WL 12540517, at *4 (Fed. Cl. Jan. 24, 2014) (paralegal time devoted to "[t]asks such as proofreading, assembling, photocopying, and mailing" may be non-compensable), aff'd, 818 F.3d 704 (Fed. Cir. 2016); Hopi Tribe v. United States, 55 Fed. Cl. 81, 99–100 (2002) (ruling that tasks such as proofreading, assembling documents, photocopying, and mailing are considered non-compensable secretarial and administrative work); Fang ex rel. Yang v. Sec'y of HHS, No. 10-33V, 2013 WL 4875120, at *6 (Fed. Cl. Office of the Special Masters Aug. 22, 2013) (deducting paralegal time spent on saving and filing orders and placing an event on the calendar); Lawrence v. Sec'y of HHS, No. 09-435V, 2013 WL 3146775, at *3–4 (Fed. Cl. Office of the Special Masters May 28, 2013) (deducting all hours billed as paralegal time that were secretarial in nature).

The tasks which the government identifies as non-compensable are those characterized in the timesheets with descriptions such as "reviewing and managing client data" or working on "landowner access to pleadings." See, e.g., Pls.' Mot. Ex. 1 at 10 (December 6, 2016 entry for paralegal Mary Shambro); id. (December 8, 2016 entry for paralegal Megan Epperson); id. at 11 (January 13, 2017 entry for paralegal Megan Epperson); id. at 12 (March 2, 2017 entry for paralegal Megan Epperson). At oral argument, counsel for Plaintiffs explained that these generic descriptions represented time spent by paralegals communicating requests that clients provide documents such as deeds, title records, and surveys, and then receiving those documents from the clients. See Oral Argument at 15:05–55 (Feb. 13, 2018). Because it is unclear from the descriptions in the billing records whether the paralegals performed any analysis of the documents, the Court agrees with the government that Plaintiffs have failed to establish that these tasks were not largely clerical or secretarial in nature. Accordingly, they are not compensable and reductions will be taken for such work.

8

The government also objects to what it claims was excessive time (59.5 hours) spent by Plaintiffs' counsel researching issues relevant to the Federal Circuit's consideration of and ruling in Caquelin v. United States, 697 F. App'x 1016 (Fed. Cir. 2017) (per curiam), and the Supreme Court's decision in Arkansas Game and Fish Commission v. United States, 568 U.S. 23 (2012). See Def.'s Resp. at 22. The issues researched were relevant to this case because the government moved for a stay based on the pending Federal Circuit decision in Caquelin and because Judge Bruggink explicitly advised the parties that if the matter went to trial, he would hear evidence relevant to the application of the factors set forth in Arkansas Game and Fish to Plaintiffs' claims.

The Court agrees with the government, however, that the amount of time billed by counsel for research related to these issues is excessive, given their extensive experience in rails-to-trails cases and the fact that counsel were already intimately familiar with the issues raised in Caquelin (having filed an amicus brief in that case and written extensively regarding its implications in other rails-to-trails cases). Accordingly, the hours billed for attorney time expended on these issues shall be reduced by 50%.[2]

Finally, the government challenges as unreasonable the more than 100 hours counsel claim was spent preparing their motion for fees. Id. at 22–23. The Court agrees that the number of claimed hours is unreasonable, particularly given the fact that Plaintiffs devoted a significant amount of that time to an argument that the Court rejects below—that the Court should award fees at prevailing rates for the Washington, DC area, rather than the St. Louis market. Moreover, it is apparent that a number of the longer passages in Plaintiffs' motion do not represent original work, but were instead cut and pasted from other fee applications. The Court concludes therefore that the hours billed for the attorney fee litigation should be reduced by 50%.[3] Further, to the extent Plaintiffs' attorneys billed for time regarding the recovery of fees well in advance of the filing of Plaintiffs' fee petition, that time is not compensable, as the Court presumes that such time was spent merely logging hours. See, e.g., Pls.' Mot. Ex. 1 at 3 (entry for counsel Lindsay Brinton from November 16, 2015, for 0.2 hours spent "work[ing] on matters re: recovery of fees"); id. at 4 (entries for January 4, 2016, and January 14, 2016, for 0.2 and 0.1 hours,

---

[2] Where Arent Fox's attorneys' billing descriptions include time devoted to the Caquelin issue in conjunction with other work performed, the Court shall reduce the hours by 25%. See, e.g., Pls.' Mot. Ex. 1 at 12 (entry for Mark Hearne for work performed on February 14, 2017, with a billing description that includes "hearing before Judge Bruggink" as well as "research of relevant caselaw on the relevance of Caquelin to the situation of these owners").

[3] Where Arent Fox's attorneys' billing descriptions include time devoted to the fee issue in conjunction with other work performed, the Court shall reduce the hours by 25%. See, e.g., Pls.' Mot. Ex. 1 at 15 (entry for Lindsay Brinton for 3.2 hours of work performed on April 12, 2017, with a billing description of "[w]ork on matters re: recovery of fees; work on trial preparation; review DOJ's exhibit and witness lists; email correspondence with DOJ re: same; preparation for status conference; attend same; e-mail correspondence with DOJ re: pre-trial schedule; e-mail correspondence with our experts; client correspondence").

respectively, same description); <u>id.</u> at 5 (entry for February 9, 2016, for 0.1 hours, same description).

**III.     Hourly Rate**

According to lead counsel in this case, Mark Hearne, the fees Plaintiffs request were calculated on the basis of the hourly rates that Arent Fox charges paying clients in the Washington, DC market for similar services. Those hourly rates, as back-calculated on the basis of counsel's billing records, are as follows:

| Attorney | Requested Rate |
|---|---|
| Debra Albin-Riley (Partner)[4] | $895/hour |
| Mark (Thor) Hearne (Partner)[5] | $859/hour |
| Abram Pafford (Counsel)[6] | $740/hour |
| Meghan Largent (Counsel)[7] | $590/hour |
| Lindsay Brinton (Counsel)[8] | $580/hour |
| Donna Mo (Associate)[9] | $665/hour |
| Stephen Davis (Associate)[10] | $540/hour |

In addition, Plaintiffs claim hourly rates ranging between $210–$355 for the services of paralegals, as well as $190–$205 per hour for work by certain "project assistants."

---

[4] Ms. Albin-Riley is a senior partner with Arent Fox, where she is a member of the firm's Complex Litigation Practice Group. Riley Decl. ¶ 1. She has over thirty years of litigation experience and is a Fellow of the Litigation Counsel of America. Id. She primarily works in the firm's Los Angeles, California office. Id.

[5] Mr. Hearne is an equity partner with Arent Fox. Decl. of Mark F. (Thor) Hearne, II (Hearne Decl.) ¶ 2, ECF No. 86-3. He has practiced law for over thirty years and has extensive experience as lead counsel in complex federal litigation before both trial and appellate courts, including, in particular, takings cases arising out of the rails-to-trails act. Id. ¶¶ 1, 9–11.

[6] Mr. Pafford is currently counsel with Arent Fox. Decl. of Abram J. Pafford ¶ 3, ECF No. 86-6. He has practiced law since 2000, including time with Fried Frank, Covington & Burling, and in his own boutique litigation firm. Id. ¶¶ 4–7. At oral argument, counsel for Plaintiffs indicated that Mr. Pafford is based in Washington, DC. See Oral Argument at 2:20–28.

[7] Ms. Largent is currently counsel with Arent Fox. Pls.' Mot. Ex. 22, ECF No. 100-9. She has twelve years of litigation experience. Suppl. Decl. of Mark. F. (Thor) Hearne, II ¶ 15, ECF No. 100-1. Her declaration does not state where her practice is based. See generally Largent Decl.

[8] Ms. Brinton is currently counsel with Arent Fox and was previously a senior associate with the firm from 2010 to 2015. Decl. of Lindsay S.C. Brinton ¶ 3, ECF No. 86-4. She received her J.D. from the University of Missouri in 2006 and is a member of both the Missouri and District of Columbia bars. Id. ¶¶ 1–2. She is based out of an office Arent Fox maintains in Clayton, Missouri (hereinafter, the "St. Louis office").

[9] Donna Mo is an associate with Arent Fox. See Pls.' Mot. Ex. 1 at 22. Plaintiffs have not provided the Court with a summary of her work experience. See Landowners' Reply in Supp. of Their Mot. for Payment of Att'y Fees & Litigation Expenses (Pls.' Reply) at 8, ECF No. 100. Ms. Mo billed for just 4.6 hours of work on this case. See Pls.' Reply at 8.

According to Mr. Hearne, the rates charged by Arent Fox "are established and reviewed annually" and are "based upon substantial analysis and research of the legal marketplace." Hearne Decl. ¶ 38. "Among other factors," Mr. Hearne states, "the firm considers, (a) the prevailing hourly rates charged by our peer firms for comparable work by attorneys possessing comparable skill and experience, (b) surveys of AmLaw 200 law firm billing rates prepared by PriceWaterhouseCoopers and the National Law Journal, (c) the overhead and expenses necessary to provide the legal services to our clients; and (d) the billing practices in the marketplace." Id.

The government argues that Plaintiffs are not entitled to recover their fees at forum rates because counsel performed the bulk of the work in this case outside of Washington, DC, and because there is a significant difference between the forum rates and the prevailing market rate for legal services in St. Louis, Missouri, where Plaintiffs' counsel practice. See Def.'s Resp. at 24–35. In the alternative, the government contends that if the Court applies Washington, DC rates, it should adopt the billing rates set forth in the Laffey Fee Matrix that is maintained by the U.S. Attorney's Office for the District of Columbia.[11] See id. at 35–38.

Plaintiffs do not meaningfully contest that the bulk of the work in this case was performed outside of Washington, DC.[12] See Oral Argument at 1:20–2:39. They contend,

---

[10] Mr. Davis is an associate with Arent Fox. Pls.' Mot. Ex. 1 at 2. His work experience includes time as an Assistant United States Attorney for the Eastern District of Missouri; an adjunct professor at St. Louis University School of Law; and a state elections operations director for a presidential campaign. Decl. of Stephen S. Davis ¶¶ 3–5, ECF No. 86-5. His declaration does not state where his practice is based. See id. ¶ 3.

[11] The Matrix maintained by the U.S. Attorney's Office has its origin in the 1983 decision of the District Court for the District of Columbia in Laffey v. Northwest Airlines, Inc., 572 F. Supp. 354, 371–72, 374 (D.D.C. 1983), aff'd in part, rev'd in part, 746 F.2d 4 (D.C. Cir. 1984), overruled by Save Our Cumberland Mountains, Inc. v. Hodel, 857 F.2d 1516 (D.C. Cir. 1988) (en banc). That case "set out a matrix of reasonable rates for attorneys in the Washington, D.C. metropolitan area who were engaged in complex federal litigation at that time." Biery III, 818 F.3d at 712–13 (citing Laffey, 572 F. Supp. at 371–72). There have been "two competing approaches" used to update the 1983 Laffey Matrix rates. Id. at 713. The first, and the one the government endorses in this case, is "based on changes to the cost of living in the Washington D.C. metropolitan area as measured by the Consumer Price Index for All Urban Consumers ('CPI–U')." Id. (citation omitted). "The second approach is to use the 'Kavanaugh Matrix,' advanced by economist Dr. Michael Kavanaugh," which updates Laffey Matrix rates based on changes to the Legal Services Index (LSI) component of the Consumer Price Index (CPI). Id.

[12] Further, inferences drawn from the billing records strongly support the conclusion that the bulk of the work was performed outside of Washington, DC. Thus, the majority of the attorney hours billed are attributable to work performed by Ms. Brinton and Mr. Davis, both of whom appear to work out of Arent Fox's St. Louis office. Virtually all of the conferences with the Court were held by telephone. While Mr. Hearne apparently practices out of an office in Washington, DC as well as the St. Louis office, he supplied the address of Arent Fox's St. Louis office to the Clerk when this case was filed. Indeed, Mr. Hearne was in the St. Louis office when this Court held oral argument on the application for attorney fees. To the extent that Plaintiffs

however, that the <u>Davis County</u> exception is nevertheless wholly inapplicable because Arent Fox is seeking to recover fees at its actual billing rates. <u>See</u> Pls.' Reply at 14. According to Plaintiffs, the <u>Davis County</u> exception applies where "an attorney seeks a fee-shifting windfall by asking for fees greater than those they actually command and receive in the ordinary course of their practice." <u>Id.</u> "That is the exact opposite of the situation here," Plaintiffs claim, because "[l]andowners' counsel . . . seek to be compensated at their usual Arent Fox rates—nothing less, nothing more." <u>Id.</u> (emphasis omitted).

Plaintiffs' argument that the <u>Davis County</u> exception is inapplicable lacks merit. The purpose of that exception is to preclude counsel from receiving a windfall by securing compensation at a forum rate that is significantly higher than the reasonable rate counsel could command in the local market where he or she practices law and was retained. In some cases, of course, counsel's "actual billing rates" might be given significant weight in determining the prevailing rate in the forum or in the local market. <u>See</u> <u>Lost Tree Vill. Corp. v. United States</u>, 135 Fed. Cl. 92, 96 (2017), <u>appeal docketed</u>, No. 18-1466 (Fed. Cir. Jan. 24, 2018). But given that there is no evidence in this case that Plaintiffs agreed to pay fees at Arent Fox's standard billing rates, they have no bearing on the applicability of the <u>Davis County</u> exception.[13]

Plaintiffs contend that the government has failed to establish that prevailing local rates in St. Louis are substantially lower than the Washington, DC rates that they seek. The Court notes that Plaintiffs have supplied no evidence of their own regarding prevailing rates in St. Louis, Missouri. In another rails-to-trails case involving the same counsel, however, Judge Firestone concluded on the basis of data drawn from one of the plaintiffs' own affiants that (at least in 2012) rates in St. Louis were significantly lower than rates in DC. <u>See</u> <u>Biery I</u>, 2012 WL 5914260, at *6.

Further, in another recent decision by Judge Firestone in a rails-to-trails case, she found that a reasonable hourly rate for partners practicing in the St. Louis market is $475, for associates, $275, and for paralegals, $150–$175. <u>See</u> <u>Greenwood</u>, 131 Fed. Cl. at 240–41.[14] Similarly, a district court in the Eastern District of Missouri recently awarded fees at comparable hourly rates in a civil rights case. <u>Holmes v. Slay</u>, No. 4:12CV2333, --- F. Supp. 3d ---, 2017 WL 994473, at *3 (E.D. Mo. Mar. 15, 2017) (awarding fees at rate of $450 per hour for named

---

take the position that the bulk of the work was not performed outside of Washington, DC, the Court believes that it was their obligation to establish that fact, which they have failed to do.

[13] Plaintiffs did not submit a copy of their retainer agreements with Arent Fox, but it is the Court's understanding that the standard practice is for the firm to take rails-to-trails cases on a contingent fee basis.

[14] <u>See also</u> <u>Thomas v. United States</u>, Nos. 10-54L and 10-459L, 2014 WL 1347221, at *4 (Fed. Cl. Apr. 4, 2014) (rails-to-trails case awarding fees "at the higher end of the scale for attorneys practicing in St. Louis"—$475 per hour for partners; $275 per hour for associates; and $150–$175 per hour for paralegals).

partner in law firm with over 20 years of experience;[15] $400 per hour for another highly experienced partner;[16] $330 and $350 per hour for two associates; and $150 per hour for a paralegal).

In Banks v. Slay, No. 4:13CV02158, 2016 WL 5870059, at *3 (E.D. Mo. Oct. 7, 2016), aff'd, 875 F.3d 876, 882–83 (8th Cir. 2017), a successful effort to enforce a default judgment in a civil rights case, the district court awarded fees for the services of a highly experienced attorney at the rate of $355 per hour and for a paralegal at $93 per hour. Although the attorney had elsewhere received $450 per hour for his work in civil rights cases, the court found the lower rate reasonable because the case was not a typical civil rights matter and because the attorney had billed a large amount of time to conduct research. Id.; see also Van Booven v. PNK (River City), LLC, No. 4:14-CV-851, 2015 WL 3774043, at *5 (E.D. Mo. June 17, 2015) (awarding highly experienced partners hourly rates of $300 and $350 for services in wage-and-hour case settled through offer of judgment).

Both the rails-to-trails case (Greenwood) and the civil rights case (Holmes) resulted in significantly greater recoveries than in this case, which was resolved through an offer of judgment in the amount of approximately $77,000. Holmes went to trial and resulted in a verdict of $2.5 million for a single plaintiff. See 2017 WL 994473, at *1. Greenwood was settled on behalf of 53 landowners for more than $1 million. See 131 Fed. Cl. at 236. Arguably, then, the Court would be acting well within its discretion to award fees in this case at rates lower than those awarded in Greenwood and Holmes. See Dalles Irrigation Dist. v. United States, 91 Fed. Cl. 689, 698–99 (2010) (observing that "the degree of success obtained . . . may affect the proportional amount of fees awardable").

Nonetheless, the Court is also cognizant of the attorney rate ranges and average rates set forth in the Missouri Lawyers Weekly 2016 survey, see ECF No. 97-10, which are consistent with the fee awards in Holmes and Greenwood. This Court accordingly concludes that in the St.

---

[15] See Jon Loevy, Loevy & Loevy, https://www.loevy.com/attorneys/jon-loevy/ (last visited Mar. 6, 2018) (describing experience of named partner Jon Loevy).

[16] See Roshna Bala Keen, Loevy & Loevy, https://www.loevy.com/attorneys/roshna-bala-keen/ (last visited Mar. 6, 2018) (describing experience of partner Roshna Bala Keen).

Louis market the reasonable rates for the services of counsel and paralegals in this case are as follows:

| Attorney | Rate |
|---|---|
| Debra Albin-Riley (Partner) | $475/hour |
| Mark (Thor) Hearne (Partner) | $475/hour |
| Abram Pafford (Counsel) | $375/hour |
| Meghan Largent (Counsel) | $375/hour |
| Lindsay Brinton (Counsel) | $375/hour |
| Donna Mo (Associate) | $275/hour |
| Stephen Davis (Associate) | $275/hour |
| Paralegals/Project Assistants | $150/hour |

As is readily apparent, these rates are substantially lower (close to one-half) of the forum rates Plaintiffs claim, which the Court will assume are reasonable for purposes of making the Avera comparison. Accordingly, under Avera, the Court will award fees to Plaintiffs at the aforementioned St. Louis rates.

## IV.    Attorney Fee Award

As described in the table below, with the foregoing deductions, the Court awards Plaintiffs fees in the amount of **$523,786.98**.

| Attorney | Claimed Hours | Claimed Rate | Claimed Fee | Adjusted Hours | Adjusted Rate | Adjusted Fee |
|---|---|---|---|---|---|---|
| Debra Albin-Riley | 11.4 | $895/hour | $10,203.00 | 2.7 | $475/hour | $1,271.10 |
| Mark ("Thor") Hearne, Jr. | 439.6 | $859/hour | $377,616.40 | 390.0 | $475/hour | $185,250.00 |
| Abram Pafford | 102.0 | $740/hour | $75,480.00 | 101.6 | $375/hour | $38,100.00 |
| Meghan Largent | 18.9 | $590/hour | $75,480.00 | 15.9 | $375/hour | $5,962.50 |
| Lindsay Brinton | 492.6 | $580/hour | $285,708.00 | 427.5 | $375/hour | $160,314.38 |
| Donna Mo | 4.6 | $665/hour | $3,059.00 | 4.6 | $275/hour | $1,265.00 |
| Stephen Davis | 216.3 | $540/hour | $116,802.00 | 182.8 | $275/hour | $50,270.00 |
| Paralegals/ Project Assistants | 688.8 | $190–$355/hour | $192.436.00 | 542.4 | $150/hour | $81,354.00 |
| **TOTALS** | **1,974.2** | | **$1,072,455.40** | **1,663.2** | | **$523,786.98** |

## V.     Expenses

Under the URA, Plaintiffs are entitled to reimbursement of reasonable costs actually incurred in connection with this case. Such expenses must, of course, be "reasonable and necessary." Oliveira v. United States, 827 F.2d 735, 744 (Fed. Cir. 1987) ("[T]he trial court, in its discretion, may award only those reasonable and necessary expenses of an attorney incurred or paid in preparation for trial of the specific case before the court, which expenses are those customarily charged to the client where the case is tried."). And plaintiffs must submit adequate documentation in support of their request in order for the court to approve it. See Preseault v. United States, 52 Fed. Cl. 667, 679 (2002) (documentation is required because "[w]ithout sufficient detail, a court is unable to determine whether the hours, fees, and expenses are reasonable for any individual item invoiced").

Plaintiffs have requested reimbursement of $95,668.91 in expenses. Pls.' Mot. Ex. 1 at 41. As with their attorneys' fees claim, Plaintiffs have not identified which expenses were associated with unsuccessful claims. Accordingly, the Court will reduce by 40% those expenses incurred through July 29, 2016.

The government has also challenged as insufficiently documented and/or unjustified the expenses Plaintiffs have claimed for Federal Express shipments. Def.'s Resp. at 39. The Court agrees with the government that the over 100 Federal Express charges Plaintiffs have billed are not accompanied by explanations that would allow the Court to determine what documents were transmitted and to whom, and whether the use of the expedited delivery service was reasonable or necessary, as opposed to merely convenient for counsel. Accordingly, the charges are disallowed. See Parrot, Inc. v. Nicestuff Distrib. Int'l, Inc., No. 06-61231-CIV, 2010 WL

16

680948, at *16 (S.D. Fla. Feb. 24, 2010) (citing Financial Bus. Equip. Sols., Inc. v. Quality, No. 08-60769-CIV, 2009 WL 1423931, at *3 (S.D. Fla. May 18, 2009)) (denying reimbursement for Federal Express charges where counsel failed to document need); Kerns v. Pro-Foam of S. Ala., Inc., No. 06-0431-WS-B, 2007 WL 2710372, at *3 (S.D. Ala. Sept. 13, 2007) (finding moving party failed to establish the need for Federal Express charge and holding that the charge thus appeared incurred solely for convenience of counsel); Smith v. Quintiles Int'l, No. 5:04-cv-657-Oc-10GRJ, 2007 WL 2412844, at *4 (M.D. Fla. Aug. 21, 2007) (Federal Express charges not recoverable); see also Corsair Asset Mgmt., Inc. v. Moskovitz, 142 F.R.D. 347, 351 (N.D. Ga. 1992) (denying express mail costs under 28 U.S.C. § 1920).

The Court also agrees with the government that Plaintiffs have failed to sufficiently justify reimbursement of the itemized charges they have claimed for Westlaw research. See Def.'s Resp. at 39. Nothing in the record indicates that counsel is charged by Westlaw on a session-by-session basis. The Court's understanding is that "many firms pay a flat rate to Lexis and Westlaw regardless of their usage." Biery II, 2014 WL 12540517, at *8 (quoting Carpenters Health & Welfare Fund v. Coca-Cola Co., 587 F. Supp. 2d 1266, 1272 (N.D. Ga. 2008)). And the Court agrees with Judge Firestone that "counsel cannot claim such flat rate payments as an out-of-pocket expense." Id. (quoting Carpenters Health, 587 F. Supp. 2d at 1272). The Court therefore denies Plaintiffs' request for reimbursement of these expenses.

The Court, however, rejects the government's argument that it was unreasonable for Plaintiffs to pay their mapping expert premium rates in connection with his deposition testimony. See Def.'s Resp. Ex. 5 at 7, ECF No. 97-5. It similarly rejects the government's challenge to the reasonableness of certain rental car rates. See id. at 1–2. In neither instance does the government support its claims with any evidence that the charges are out of bounds for the services provided.

The Court agrees that—absent adequate justification—it is not reasonable for counsel to charge for upgrades of standard coach seats on airlines. The $596 charge for a first class upgrade to Ms. Brinton's flight from Minneapolis to St. Louis on July 6, 2017, is accordingly unreasonable. See Pls.' Mot. Ex. 1 at 101–03. The same is true of the assorted upgrades to exit row seats charged by Ms. Brinton without stated justification. See id. at 100, 103, 107. Further, the Court disallows a charge of $324.46 for a round trip flight that counsel cancelled and for which the charge appears to have been refunded. See id. at 110.

Finally, Plaintiffs request reimbursement of $11,015.38 for a fee that the Westin Hotel in St. Louis apparently charged them for the cancellation of a conference room rental for the week of the planned trial. See id. at 38, 41. Plaintiffs have failed to provide documentation to establish the reasonableness of this charge, which seems exorbitant on its face. They have not supplied a copy of the hotel policy or of their contract with the hotel, or otherwise explained why the charge was unavoidable. Accordingly, the cost is disallowed.

As described in the table below, with the foregoing deductions, the Court awards Plaintiffs expenses in the amount of **$76,667.76**.

| | |
|---|---|
| Deductions for Work Performed Before July 19, 2016 | $4,774.80 |
| Deductions for Fed Ex Shipments | $2,212.41 |
| Deductions for Westlaw Research | $7568.93 |
| Deduction for Hotel Cancellation Fee | $11,015.38 |
| Airline Upgrade Deductions | $998.46 |
| **Total Deductions** | **$25,571.52** |
| Claimed Expenses | $95,668.81 |
| **Adjusted Reasonable Expenses** | **$69,098.83** |

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for attorneys' fees and expenses is **GRANTED-IN-PART** and **DENIED-IN-PART**. Plaintiffs are awarded fees in the amount of **$523,786.98** and expenses in the amount of **$69,098.83**.

The parties shall file a joint status report no later than March 23, 2018, identifying any further steps that must be taken before final judgment may be entered in the case.

**IT IS SO ORDERED.**

s/ Elaine D. Kaplan
ELAINE D. KAPLAN
Judge