# In the United States Court of Federal Claims

No. 15-986L
(Filed: April 19, 2018)

|  |  |
|---|---|
| MICHAEL A. AND TINA C. BRATCHER, et al., <br><br> Plaintiffs, <br><br> v. <br><br> THE UNITED STATES OF AMERICA, <br><br> Defendant. | Keywords: Rails-to-Trails; Fifth Amendment Takings Clause; Uniform Relocation Assistance and Real Property Acquisition Policies Act; 42 U.S.C. § 4654; Attorney Fees; Fee Shifting; Forum Rate; <u>Davis County</u> Exception; Motion for Reconsideration; RCFC 59(a). |

*Mark F. (Thor) Hearne, II*, Arent Fox LLP, Washington, DC, with whom were *Lindsay S.C. Brinton*, *Abram J. Pafford*, *Meghan S. Largent*, and *Stephen S. Davis*, Arent Fox LLP, for Plaintiffs.

*Randall M. Stone*, Senior Attorney, Environment and Natural Resources Division, U.S. Department of Justice, Washington, DC, with whom was *Jeffrey H. Wood*, Acting Assistant Attorney General, for Defendant.

## OPINION AND ORDER

**KAPLAN, Judge.**

Plaintiffs have moved for reconsideration of the Court's March 9, 2018 Opinion and Order, ECF No. 114, in which the Court granted-in-part and denied-in-part Plaintiffs' motion for attorneys' fees and expenses. For the reasons discussed below, Plaintiffs' motion is **DENIED**.

## BACKGROUND

The Court previously set forth the facts of this case in its March 9 opinion. See <u>Bratcher v. United States</u>, No. 15-986L, 2018 WL 1225032, at *1–2 (Fed. Cl. Mar. 9, 2018). It therefore presumes familiarity with the case and provides only a brief factual overview below.

On August 14, 2017, Plaintiffs in this rails-to-trails takings case accepted the government's Rule 68 offer of judgment in the amount of $77,466.80, covering fourteen claims made by eleven property owners in Lafayette County, Missouri. Id. at *1. Pursuant to the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 (URA), 42 U.S.C. § 4654(c), Plaintiffs then sought an award of attorneys' fees in the amount of

$1,072,455.40 for 1,974.2 claimed hours of work.[1] Id. at *1, *11. The Court ultimately determined both that Plaintiffs' attorneys' claimed hours were excessive and, as discussed in more detail below, that their hourly rates should be based on the prevailing local rates in St. Louis, Missouri, rather than the prevailing rates in Washington, DC, as Plaintiffs had requested. Id. at *3–11. After reducing the claimed hours and applying the St. Louis rates, the Court awarded Plaintiffs $523,786.98 in fees for 1,663.2 hours reasonably expended on the case. Id. at *11.

Plaintiffs then filed the instant motion on April 6, 2018. ECF No. 116.

## DISCUSSION

### I.   Standard for Granting a Motion for Reconsideration

Under Rule 59(a) of the Rules of the Court of Federal Claims, the Court may grant a motion for reconsideration "(A) for any reason for which a new trial has heretofore been granted in an action at law in federal court; (B) for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court; or (C) upon the showing of satisfactory evidence, cumulative or otherwise, that any fraud, wrong, or injustice has been done to the United States."

To meet this standard, a party generally must demonstrate that the court has committed a "manifest error of law[] or mistake of fact." Johnson v. United States, 126 Fed. Cl. 558, 560 (2016) (quoting Bishop v. United States, 26 Cl. Ct. 281, 286 (1992)). To do so, the party "ordinarily . . . must show either that an intervening change in controlling law has occurred, evidence not previously available has become available, or that [granting] the motion is necessary to prevent manifest injustice." CBS Corp. v. United States, 75 Fed. Cl. 498, 501 (2007) (quotation omitted); see also Johnson, 126 Fed. Cl. at 560. Because the standard is a high one, the court should not grant the motion unless the party has made "a showing of extraordinary circumstances which justify relief." Biery v. United States, 818 F.3d 704, 711 (Fed. Cir.) (quoting Caldwell v. United States, 391 F.3d 1226, 1235 (Fed. Cir. 2004)), cert. denied, 137 S. Ct. 389 (Mem.) (2016). Thus, whether to grant reconsideration lies within the sound discretion of the court. See Yuba Nat. Res., Inc. v. United States, 904 F.2d 1577, 1583 (Fed. Cir. 1990).

### II.   Application to Plaintiffs' Motion

The Court has carefully considered Plaintiffs' motion and, for the reasons discussed below, has determined that reconsideration is not warranted.

#### A.   **Applicability of the Davis County Exception**

Plaintiffs' primary contention is that the Court "should reconsider its rate calculation because the Davis County exception does not apply." Landowners' Mot. for Recons. of Mar. 9 Op. & Order Concerning Att'y Fees (Pls.' Mot.) at 3, ECF No. 116. In so arguing, Plaintiffs

---

[1] Plaintiffs also requested the reimbursement of $95,668.81 in litigation expenses. Bratcher, 2018 WL 1225032, at *11.

largely recycle the same contentions that they put forth during the initial briefing of their request for attorneys' fees. As discussed below, these arguments remain unpersuasive.

As the Court explained in its March 9 opinion, the Davis County exception, named for the case from which it originates, Davis County Solid Waste Management & Energy Recovery Special Service District v. EPA, 169 F.3d 755 (D.C. Cir. 1999) (per curiam), is a "limited exception" to the ordinary "forum" rule for determining reasonable hourly rates in a fee-shifting case. See Bratcher, 2018 WL 1225032, at *3 (quoting Avera v. Sec'y of HHS, 515 F.3d 1343, 1349 (Fed. Cir. 2008)). Under the forum rule, "the location of the trial court is typically designated as the applicable forum" for the case—i.e., as the "'relevant community' that serves as the basis for determining a reasonable hourly rate." Id. at *2.

If, however, the Davis County exception applies, then the location of the trial court is not used to identify the "relevant community" when determining the reasonable hourly rate. See Avera, 515 F.3d at 1349–50; Davis Cty., 169 F.3d at 759–60. Instead, the court looks to the "market rate prevailing" in the applicable, non-forum community. Avera, 515 F.3d at 1349; see also Masias v. Sec'y of HHS, 634 F.3d 1283, 1288 (Fed. Cir. 2011) (explaining that, under Avera, "one market rate, the forum rate, should generally apply for attorneys' fees[,] but . . . in certain circumstances, another market rate, the locality rate, should apply"); Davis Cty., 169 F.3d at 759–60. And that applicable, non-forum community is the community in which the bulk of the work was performed. See Masias, 634 F.3d at 1288; Avera, 515 F.3d at 1349; Davis Cty., 169 F.3d at 759–60.

As further described in this Court's March 9 opinion, the court of appeals has established a two-part inquiry to determine whether the Davis County exception applies in cases litigated in the Court of Federal Claims. See Bratcher, 2018 WL 1225032, at *3 (citing Avera, 515 F.3d at 1349). First, the court determines whether "the bulk of the work in the case [was] done outside of the District of Columbia." Avera, 515 F.3d at 1349. Second, the court assesses whether "'there is a very significant difference'" between the forum rate and the local rate—i.e., the rate where the bulk of the work was performed—such that the "prevailing attorneys' rates" in that "legal market" are "substantially lower" than District of Columbia rates.[2] Id. (emphasis in original) (quoting Davis Cty., 169 F.3d at 755).

Applying this test to the facts of this case, the Court determined that both prongs were satisfied. See Bratcher, 2018 WL 1225032, at *9–11. Thus, it first observed that Plaintiffs "d[id] not meaningfully contest that the bulk of the work in this case was performed outside of

---

[2] In their motion, Plaintiffs make much of the fact that in its opinion, the Court characterized the local (non-forum) rate as the reasonable rate counsel could command in the market where he or she "practices law and was retained." Pls.' Mot. at 6 (quoting Bratcher, 2018 WL 1225032, at *10). They point out (correctly) that none of the Davis County cases use this precise formulation. To the extent that this formulation was imprecise, the Court clarifies that it understands that the local market for purposes of Avera and Davis County is the market where the bulk of the work was performed. In this case, that is the St. Louis market, which also happens to be the market where Plaintiffs retained counsel and where all counsel (other than Mr. Pafford) practice law.

Washington, DC."³ Id. at *9 & n.12. Second, it concluded that it was "readily apparent" that the market rates for legal services in St. Louis, where the bulk of the work on the case was apparently performed, were "substantially lower (close to one-half) of the forum rates." Id. at *11. The Court therefore concluded that the Davis County exception applied, and accordingly based its fee award on the prevailing rates in the market where the bulk of the work was performed—St. Louis. See id.

In their motion, Plaintiffs argue that the Court should reconsider its decision that the Davis County exception applies. They contend that the exception is not triggered "[w]here attorneys are seeking the actual rates they routinely receive from fee-paying clients in a non-fee-shifting context." Pls.' Mot. at 2. In such cases, according to Plaintiffs, counsel does not receive the "windfall" about which the courts of appeals in Davis County and Avera were concerned. See id.

Fishing for some support for their argument in the text of Avera, they contend that the Court has misinterpreted the meaning of the phrase "prevailing attorneys' rates," which the court of appeals used in Avera when explaining the second prong of the Davis County exception. See id. at 4, 6–7. This textual argument is clearly without merit.

As noted, the court of appeals held in Avera that the Davis County exception applies when "the bulk of the work is done outside of the District of Columbia in a legal market where the prevailing attorneys' rates are substantially lower." 515 F.3d at 1349. Plaintiffs argue that the word "prevailing," which the court of appeals employed in describing the exception, modifies the word "attorneys'" only, rather than modifying the entire phrase "attorneys' rates." See Pls.' Mot. at 6–7. Therefore, they argue, the relevant comparison for purposes of applying the Davis County exception is not between forum rates and the prevailing rates in the local market where the bulk of the work has been performed. Rather, Plaintiffs claim, the relevant comparison is between the forum rate and the rates charged by the "prevailing attorneys" (i.e., Plaintiffs' counsel), whether or not those rates are reasonable for the local market. It is that comparison, Plaintiffs argue, which will determine whether an award of fees at forum rates will result in a "windfall" to counsel.

This is not a reasonable construction of Avera's language and is inconsistent with the way the Davis County exception has been described and applied. In the passage Plaintiffs cite, the court of appeals made reference to situations where the bulk of the legal work in a case is performed "in a legal market where the prevailing attorneys' rates are substantially lower."

---

³ Indeed, when asked directly at oral argument whether he would acknowledge that the bulk of the legal work in the case was performed outside of Washington, DC, Plaintiffs' lead counsel, Mr. Hearne, replied that he "c[ouldn't] confirm that one way or the other." Oral Argument at 1:13–1:35 (Feb. 13, 2018). In their motion for reconsideration, Plaintiffs are similarly vague regarding where Mr. Hearne himself performed his work in this case, hinting (without explicitly stating) that it was St. Louis by observing only that he has "built [a] national practice while living in St. Louis." Pls.' Mot. at 2. Accordingly, Plaintiffs have failed to establish that the Court committed a mistake of fact when it concluded that the bulk of the work in this case (including Mr. Hearne's work) was performed out of Arent Fox's office in the St. Louis suburbs.

Avera, 515 F.3d at 1349 (emphasis added). Given the use of the plural possessive ("attorneys'" not "attorney's"), as well as the reference to a "legal market," the court of appeals' language clearly refers to the rates charged by attorneys generally for legal services in the legal market where the bulk of the work was performed—that is, the rates that "prevail" in that market. It is not reasonable to read the phrase "the prevailing attorneys' rates" as a reference to the actual rates charged by the attorney (or attorneys) representing the prevailing party, which may exceed, perhaps considerably, market rates in the community where the bulk of the work was performed.

Moreover, Plaintiffs' reading is inconsistent with the way the court of appeals has applied the second prong of Avera. Thus, in Avera, the court of appeals observed that "the market rate prevailing in the District of Columbia is significantly higher than the market rate prevailing in Cheyenne, [Wyoming]," the city where the work in that case was performed. Id. And in Masias, the Federal Circuit made it even clearer that when the exception is triggered, "another market rate, the locality rate, should apply." 634 F.3d at 1288.

Likewise, in Davis County itself, the court held that the attorneys representing the plaintiff should be awarded fees at the rates prevailing in "the less expensive legal market," where "virtually all of the work was performed." 169 F.3d at 760. The opinions of other courts applying Davis County confirm that the correct comparison is between the prevailing rates in the forum and the prevailing rates where the bulk of the work was performed, and not between the prevailing rate in the forum and the rate that the "prevailing attorneys" claim that they customarily charge in the local market. See Sierra Club v. Jackson, 926 F. Supp. 2d 341, 347 (D.D.C. 2013) (observing that "courts should calculate attorney fees based on the attorney's home jurisdiction" where Davis County criteria are met); Conservation Force v. Salazar, 916 F. Supp. 2d 15, 23–24 (D.D.C. 2013) (in cases where Davis County exception applies, awards are appropriately based on "home market rates").

Plaintiffs also claim that the Court's interpretation of the Davis County exception undermines the purposes underlying the URA's fee-shifting provision. Thus, they argue that under Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542 (2010), "one of the core goals of federal fee-shifting jurisprudence . . . is to ensure 'that an attorney is compensated at the rate that the attorney would receive in cases not governed by the federal fee-shifting statutes.'" Pls.' Mot. at 3–4 (quoting Perdue, 559 U.S. at 555). But Plaintiffs have wrenched the quoted language from Perdue out of its context. In the quoted passage, the Supreme Court was not discussing the purposes of fee-shifting statutes; it was addressing the "'rare' and 'exceptional'" circumstances in which a lodestar award might be enhanced if, on the facts of the case, the lodestar "d[id] not adequately measure the attorney's true market value, as demonstrated in part during the litigation"—i.e., as demonstrated by the attorney's "superior performance." See Perdue, 559 U.S. at 554–55 (footnote omitted) (quoting Blum v. Stenson, 465 U.S. 886, 897 (1984)).

Indeed, contrary to Plaintiffs' argument, Perdue actually makes clear that the "aim of fee-shifting statutes" is not to ensure that any particular attorney will be compensated at his or her usual rates. See id. at 551. Instead, their purpose is to provide a fee award that is "sufficient to induce a capable attorney to undertake the representation of a meritorious . . . case." Id. at 551–52; see also id. at 552 (observing that the purpose of a fee-shifting statute is to facilitate the enforcement of the underlying law, "not to provide 'a form of economic relief to improve the financial lot of attorneys'" (quoting Pennsylvania v. Del. Valley Citizens' Council for Clean Air,

5

478 U.S. 546, 565 (1986))). And as the Supreme Court has repeatedly held, an award based on "the prevailing market rates in the relevant community"—which may in fact be lower than counsel's regular rates—satisfies these goals. See id. at 551 (quoting Blum, 465 U.S. at 895); see also Missouri v. Jenkins, 491 U.S. 274, 285–86 (1989); Del. Valley Citizens' Council, 478 U.S. at 565.

In line with these cases, the D.C. Circuit observed in Davis County that "[p]arties should be just as able to obtain such help when fees are based on the jurisdiction in which the clients and the lawyers reside and practice as if those fees are based solely on the judicial forum." 169 F.3d at 759. It therefore concluded that "the use of home market rates is preferable when the home market is substantially less costly and the site of the bulk of the legal work because it produces a result that better reflects the purpose of fee shifting statutes," which is "'to enable private parties to obtain legal help in seeking redress for injuries resulting from the actual or threatened violation of specific federal laws.'" Id. (quoting Del. Valley Citizens' Council, 478 U.S. at 565). Nothing in Perdue undermines this reasoned conclusion.

For similar reasons, the Court is unpersuaded by Plaintiffs' corollary policy argument that an award at local market rates imposes a "pecuniary penalt[y]" on counsel whose regular rates are higher than the local market rate, thereby frustrating the goal of ensuring that plaintiffs can secure competent counsel. See Pls.' Mot. at 5. As noted, the focus of fee-shifting statutes is not on ensuring that counsel is compensated at rates to which a paying client might agree, but on whether rates are adequate to induce competent counsel to take on a case. So long as the rates awarded are sufficient to permit clients to secure competent counsel in the applicable market, the purposes of the fee-shifting statutes are met even if some attorneys would decline to take cases unless they could receive fees at rates that privately paying clients would agree to pay. See Del. Valley Citizens' Council, 478 U.S. at 565 ("[I]f plaintiffs . . . find it possible to engage a lawyer based on the statutory assurance that he will be paid a 'reasonable fee,' the purpose behind the fee-shifting statute has been satisfied."); see also Davis Cty., 169 F.3d at 760 (observing that "when a party deliberately chooses pricier out-of-town lawyers who will be undercompensated relative to their normal rates, the principal purpose of the fee shifting laws, i.e., to assure adequate counsel, will not be impugned"). Fee awards at the higher rates are only justified where clients would otherwise be unable to obtain competent counsel in the relevant community, a showing Plaintiffs have not attempted to make in this case. See Bywaters v. United States, 670 F.3d 1221, 1233–34 (Fed. Cir. 2012) (rejecting claim that attorneys' fees should be based on higher rate, absent "specific evidence that no local attorneys possess the 'special expertise' necessary to take the case or that no local attorneys were willing to take the case"); cf. Simmons v. N.Y.C. Transit Auth., 575 F.3d 170, 176 (2d Cir. 2009) ("[D]istrict courts should award fees just high enough to attract competent counsel." (emphasis in original) (quoting Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany, 493 F.3d 110, 121 (2d Cir. 2007), amended and superseded by 522 F.3d 182 (2d Cir. 2008))).

In short, Plaintiffs have failed to demonstrate that this Court committed a manifest error of law or mistake of fact when it concluded that the Davis County exception applies here. Their motion for reconsideration on this ground, accordingly, lacks merit.

### B.      The Court's Determination of St. Louis Rates

Plaintiffs next ask the Court to reconsider its calculation of market rates for comparable attorneys' services in St. Louis. Pls.' Mot. at 7–8. In its March 9 opinion, the Court examined the rates awarded in recent fee decisions in the St. Louis market in similar cases, including another rails-to-trails case, as well as the rates set forth in the Missouri Lawyers Weekly 2016 survey.[4] See Bratcher, 2018 WL 1225032, at *10–11. In their motion, Plaintiffs take issue with the Court's statement that Plaintiffs "supplied no evidence of their own regarding prevailing rates in St. Louis, Missouri," and point out that in support of their reply brief, they submitted Missouri Lawyers Weekly rate surveys dating back to 2013, as well as a declaration from a partner at the Husch Blackwell law firm, Catherine Hanaway, whose office is in St. Louis. Pls.' Mot. at 8; see also Landowners' Reply in Supp. of Their Mot. for Payment of Att'y Fees and Litig. Expenses Exs. 17 (ECF No. 100-4) & 20 (ECF No. 100-7).

The Court has reviewed again the documents to which Plaintiffs point and concludes that they have no material effect on its initial conclusions. Thus, the information in the earlier Missouri Lawyers Weekly surveys is largely duplicative of the information found in the 2016 survey, which the Court has already discussed. Further, the declaration from Ms. Hanaway is somewhat vague and conclusory; and, in any event, the Court is not convinced that litigating a garden-variety rails-to-trails case presents difficulties and complexities comparable to those encountered in the types of high-stakes civil and white-collar criminal cases to which Ms. Hanaway refers. The Court instead is persuaded by the St. Louis rates awarded in the cases it cited in its initial opinion, which included a rails-to-trails case. Thus, the Court did not work a manifest injustice when it failed to discuss the materials Plaintiffs reference in their motion for reconsideration.

### C.      The Rates Assigned to Mr. Pafford and Mr. Hearne

Finally, Plaintiffs ask the Court to reconsider the hourly rates it assigned to the work performed by Mr. Pafford and Mr. Hearne. Pls.' Mot. at 9. Plaintiffs reiterate that Mr. Pafford practices law only in Washington, DC. Id. And they argue that "it is arbitrary and unfair to simply assign Mr. Hearne the 'average' rate earned by unspecified litigation partners practicing strictly in the St. Louis market" when Mr. Hearne "practice[s] in a variety of areas, including election law, tax law, constitutional law, and property rights" and has a practice that is "national in scope, reflecting his stature as a litigator and the breadth of his client base." Id.

With respect to Mr. Pafford, who incidentally performed just 5% of the claimed hours of work in this case, see Bratcher, 2018 WL 1225032, at *11, Plaintiffs have failed to establish a basis for this Court to award him fees at District of Columbia rates, notwithstanding that this is

---

[4] The cases reviewed by the Court included Greenwood v. United States, 131 Fed. Cl. 231, 240–41, appeal dismissed, No. 17-2243 (Fed. Cir. Sept. 28, 2017); Holmes v. Slay, No. 4:12CV2333, 2017 WL 994473, at *3 (E.D. Mo. Mar. 15, 2017); Banks v. Slay, No. 4:13CV02158, 2016 WL 5870059, at *3 (E.D. Mo. Oct. 7, 2016), aff'd, 875 F.3d 876, 882–83 (8th Cir. 2017); and Van Booven v. PNK (River City), LLC, No. 4:14-CV-851, 2015 WL 3774043, at *5 (E.D. Mo. June 17, 2015).

where he practices law. As referenced above, absent a showing that Mr. Pafford possessed some special expertise that was not available to Plaintiffs in the local market, the local rates apply. The Court thus declines to reconsider the rate it awarded for Mr. Pafford's services.

As to Mr. Hearne, the Court determined that a reasonable rate for an attorney with his skill and experience in the St. Louis market was $475 per hour, which matched the highest rate awarded in any of the cases the Court surveyed, and even exceeded the rates awarded to similarly experienced partners who took cases to trial and secured highly favorable outcomes for their clients. See id. at *10–11. The Court's award thus adequately accounted for Mr. Hearne's considerable litigation skills and experience, and reconsideration is not warranted.[5]

\* \* \* \* \* \* \* \* \* \* \*

In sum, Plaintiffs have not established the existence of any grounds for reconsidering the Court's March 9, 2018 opinion. Plaintiffs' motion must therefore be **DENIED**.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for reconsideration is **DENIED**.

Accordingly, pursuant to Rule 68, the Clerk shall enter judgment in this case and award Plaintiffs' fees and expenses in the amounts set forth in the Court's March 9, 2018 opinion (ECF No. 114). Further, the stay of briefing related to Plaintiffs' bill of costs (ECF No. 85) is hereby lifted. See ECF No. 95. The government's objections to the bill of costs (if any) shall be due by **May 7, 2018**.

**IT IS SO ORDERED.**

s/ Elaine D. Kaplan
ELAINE D. KAPLAN
Judge

---

[5] To the extent Mr. Hearne is arguing that he is entitled to an upward adjustment of the lodestar for his work under the factors set forth in Perdue, the Court finds that he has failed to produce any "specific evidence" regarding his performance in this case that would support such an enhancement. See 559 U.S. at 553.